**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **BERNARD EDWARDS,** | ) | |
| **ID # 02072752,** | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **No. 3:19-CV-714-G-BH** |
| | ) | |
| **DIRECTOR, Texas Department of Criminal** | ) | |
| **Justice, Correctional Institutions Division,** | ) | |
| **Respondent.** | ) | **Referred to U.S. Magistrate Judge[1]** |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Before the Court is the *Petition for a Writ of Habeas Corpus by a Person in State Custody*, received on March 22, 2019 (doc. 3). Based on the relevant filings and applicable law, the petition should be **DENIED** with prejudice.

## I.    BACKGROUND

Bernard Edwards (Petitioner), an inmate currently incarcerated in the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID), filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his 2016 conviction and sentence in the Criminal District Court No. 7 of Dallas County, Texas. (*See* doc. 3 at 2.) The respondent is the Director of TDCJ-CID (Respondent). (*See id.* at 1.)

**A.    State Court Proceedings**

In 2014, Petitioner was indicted for intentionally and knowingly causing serious bodily injury to a child 14 years of age or younger with a deadly weapon in Case No. F-1476339-Y in the Criminal District Court No. 7 of Dallas County, Texas. (*See* doc. 15-10 at 8, 68.) He entered an

---

[1] By *Special Order No. 3-251*, this habeas case has been automatically referred for findings, conclusions, and recommendation.

open plea of guilty and a judicial confession. (*See id.* at 64-67, 71.) At his open plea hearing, the state trial court heard testimony from several state and defense witnesses, including Petitioner. (*See* doc. 15-14.) He was sentenced to 50 years' imprisonment in the TDCJ-CID. (*See* doc. 15-10 at 68-70.) The judgment was affirmed on appeal. (*See* doc. 15-3); *see also Edwards v. State*, No. 05–16–00760–CR, 2017 WL 1149670 (Tex. App.—Dallas Mar. 24, 2017, pet. ref'd). On August 23, 2017, the Texas Court of Criminal Appeals refused his petition for discretionary review (PDR). *See Edwards v. State*, No. PD-0357-17 (Tex. Crim. App. Aug. 23, 2017).

Petitioner's state habeas application, which was signed on September 20, 2018, was received by the state court on September 26, 2018. *See Clerk's Record - 11.07* at 16-38, *Ex parte Edwards*, No. W14-76339-Y(A) (Crim. Dist. Ct. No. 7, Dallas Cnty., Tex. Nov. 28, 2018). Petitioner's counsel submitted an affidavit in response to the claims raised in the state habeas application. *See id.* at 59-62, *Ex parte Edwards*, No. W14-76339-Y(A). In its findings of fact on the habeas application, the trial court found that counsel was trustworthy, and that counsel's affidavit thoroughly explained his representation of Petitioner and refuted each of the claims raised. *See id.* at 57, *Ex parte Edwards*, No. W14-76339-Y(A). It found that counsel's representation was effective, concluding that Petitioner failed to prove that counsel's representation fell below an objective standard of reasonableness and that there was a reasonable probability that the result of the proceeding would have been different but for counsel's deficiencies. *See id.*, *Ex parte Edwards*, No. W14-76339-Y(A). The Texas Court of Criminal Appeals denied Petitioner's state habeas application without written order on the findings of the trial court without a hearing on January 30, 2019. *See Ex parte Edwards*, No. WR-89,282-01 (Tex. Crim. App. Jan. 30, 2019).

B.     **Substantive Claims**

The § 2254 petition states a single claim that Petitioner "is unlawfully incarcerated as a result of the cause under which he is so confined being obtained in violation of his right to effective assistance of counsel under the 6th Amendment of the United States Constitution."  (doc. 3 at 6.)  In his brief in support, Petitioner references two grounds for relief raised in his state habeas application.  (*See* doc. 4 at 1-9.)

Respondent filed a response on July 31, 2019.  (*See* doc. 14.)  Instead of responding to the grounds referenced in Petitioner's brief in support, Respondent addressed ten grounds of ineffective assistance of counsel raised by Petitioner during the state habeas proceedings:

(1) Advising [Petitioner] that if the victim died because of the injuries caused by him, that he could be charged and prosecuted for capital murder.  And this rendered his guilty plea involuntary;

(2) Failing to investigate his drug use.  Namely, he "devised" false testimony for him regarding him smoking marijuana the night the victim fell off his chest;

(3) Failing to investigate the care provided by the victim's pediatrician [ ];

(4) Failing to request the withdrawal of his guilty plea after he testified and confessed to reckless conduct, rather than knowing and intentional conduct;

(5) Failing to investigate potential defenses, namely, the fact that the "victim's swelling had occurred prior to the pediatrician visit";

(6) Failing to investigate "perjurious information" submitted to the Grand Jury for Indictment;

(7) Informing him he would receive probation at the open plea hearing and then waiving "PSI," which prevented him from receiving probation;

(8) Informing him that he would only have to serve five years of the fifty-year sentence if he accepted the State's plea offer;

(9) Failing to inform him of his right to appeal; and

(10) Trial Counsel's cumulative errors.

(doc. 14 at 2-3.)  On September 10, 2019, Petitioner filed a reply addressing grounds 1-3, 5-8, and 10 as set out by Respondent.  (*See* doc. 16.)   Because those are the grounds that Petitioner appears to now assert, only those grounds are addressed.

## II.    APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1214, on April 24, 1996.  Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date.  *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).  Because Petitioner filed his petition after its effective date, the Act applies.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions.  Under § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural."  *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).  A decision is contrary to clearly established federal law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams*

*v. Taylor*, 529 U.S. 362, 413 (2000). As for the "unreasonable application" standard, a writ may issue "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793. "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). A petitioner must show that "there was no reasonable basis for the state court to deny relief." *Id.* at 98.

A federal district court must be deferential to state court findings supported by the record. *See Pondexter v. Dretke*, 346 F.3d 142,149-52 (5th Cir. 2003). The AEDPA has "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law. *Bell v. Cone*, 535 U.S. 685, 693 (2002) (citing *Williams*, 529 U.S. at 403-04). A state application that is denied without written order by the Texas Court of Criminal Appeals is an adjudication on the merits. *See Singleton v. Johnson*, 178 F. 3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (en banc) (holding that a denial signifies an

adjudication on the merits while a "dismissal" means the claim was declined on grounds other than the merits).

Section 2254(d)(2) concerns questions of fact. *See Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

## III.    INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment to the United States Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. CONST. amend. VI. It guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the petitioner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687. A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id.* at 697. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be

determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691.

To establish prejudice, a petitioner must show that "there is a reasonable probability that but for

counsel's unprofessional errors, the result of the proceeding would have been different. A

reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at

694; *see Williams*, 529 U.S. at 393 n.17 (recognizing that the inquiry focuses on "whether

counsel's deficient performance renders the result of the trial unreliable or the proceeding

fundamentally unfair.").  Reviewing courts must consider the totality of the evidence before the

finder of fact in assessing whether the result would likely have been different absent counsel's

alleged errors. *Strickland*, 466 U.S. at 695-96.

## A.   **Death Penalty**

For the first time in his reply, Petitioner contends that counsel was ineffective because he

"erroneously informed Petitioner that the Death Penalty would be available if Petitioner did not

agree to the Judicial Confession and Plead Guilty at an 'Open Plea' before the complainant died."

(doc. 16 at 5.) To the extent the allegations may be liberally construed to assert a claim independent

of his first state habeas ground that counsel was ineffective because he informed Petitioner that "if

the Complainant died the State could convict him of capital murder," the claim is unexhausted and

fails on the merits.  *Clerk's Record - 11.07* at 21, *Ex parte Edwards*, No. W14-76339-Y(A).

A petitioner must fully exhaust state remedies before seeking federal habeas relief. 28

U.S.C. § 2254(b).  To exhaust under § 2254, he must fairly present the factual and legal basis of

any claim to the highest available state court for review prior to raising it in federal court.  *See*

*Deters v. Collins*, 985 F.2d 789, 795 (5th Cir. 1993); *Richardson v. Procunier*, 762 F.2d 429, 432

(5th Cir. 1985); *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir. 1982).  In Texas, a prisoner must

present his claim to the Texas Court of Criminal Appeals in a PDR or a state application for a writ

of habeas corpus. *See Bautista v. McCotter*, 793 F.2d 109, 110 (5th Cir. 1986); *Richardson*, 762 F.2d at 432. A petitioner must also present his claims in a procedurally correct manner. *See Beazley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001); *Deters*, 985 F.2d at 795.

The normal rule that a state court must explicitly apply a procedural bar to preclude federal review does not apply to those cases where a petitioner has failed to exhaust his state court remedies, and the state court to which he would be required to present his unexhausted claims would now find those claims to be procedurally barred. *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). In those cases, the federal procedural default doctrine precludes federal habeas corpus review. *Id.*; *see also Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997) (finding unexhausted claim that would be barred by the Texas abuse-of-the-writ doctrine if raised in a successive state habeas petition to be procedurally barred).

Here, Petitioner did not raise a claim that counsel told him the death penalty would be available if he did not agree to enter a judicial confession and an open plea of guilty before the victim died, so the claim is unexhausted. He would be barred from raising the claim in a successive state habeas application, so his claim is also procedurally barred from federal habeas review. *See Nobles*, 127 F.3d at 423. Nevertheless, the Texas bar on successive or subsequent state habeas applications "will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Trevino v. Thaler*, 569 U.S. 413, 429 (2013) (quoting *Martinez v. Ryan*, 566 U.S. 1, 17 (2012)). "A 'substantial' claim is one that has 'some merit.'" *Ibarra v. Davis*, 738 F. App'x 814, 817 (5th Cir. 2018) (citation omitted). "An insubstantial claim is one which 'does not have any merit' or is 'wholly without factual support.'" *Id.* A determination of the merits of Petitioner's unexhausted claim is therefore required.

8

Counsel's affidavit in response to Petitioner's state habeas application stated that the state assistant district attorney advised him that if the victim died from his injuries before Petitioner's case was resolved, the prosecution "would consider re-indicting the case for capital murder." *Clerk's Record - 11.07* at 59, *Ex parte Edwards*, No. W14-76339-Y(A); *see also id.* at 61-62. In Texas, a defendant may be convicted of capital murder where he "intentionally or knowingly causes the death" of "an individual under 10 years of age." Tex. Pen. Code §§ 19.02(b)(1), 19.03(a)(8). The state may seek the death penalty for a defendant convicted of committing capital murder under § 19.03(a)(8). *See* Tex. Code Crim. Pro. art. 37.071, § 2. Because the victim was two months old at the time of the offense and approximately 2.5 years old at the time of sentencing, the state could have decided to indict and pursue a conviction for capital murder and to seek the death penalty if the victim died from the injuries caused by Petitioner. Accordingly, any advice by counsel to Petitioner about the availability of the death sentence if he did not plead guilty and confess before the victim died was not false or incorrect.[2] Petitioner has failed to show both that counsel's performance was deficient and resulting prejudice under *Strickland*. This unexhausted claim of ineffective assistance of counsel is therefore without merit, and it is not a substantial claim that excuses the procedural bar. *See Ibarra*, 738 F. App'x at 817.

**B.    Failure to Investigate**

Petitioner contends that he "was denied his right to effective assistance of counsel at Guilty Plea because [he] failed to perform or conduct a reasonable amount of pretrial investigation" as to grounds two, three, five, and six of his state habeas application. (doc. 16 at 11.)

---

[2] To the extent Petitioner's filings may be construed as reasserting his state habeas claim that counsel was ineffective because he informed Petitioner that "if the Complainant died the State could convict him of capital murder," his claim fails because counsel did not falsely inform him that he could be convicted of capital murder if the victim died. *See* Tex. Pen. Code 19.03(a)(8). He has not shown that the state court's rejection of this claim was unreasonable, and his claim should be denied.

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. To establish ineffective assistance of counsel based on a failure to investigate, "a petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial." *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005).

### 1. Drug Usage

Regarding his second state habeas ground, Petitioner claims that counsel "was deficient for devising false testimony that counsel would have been aware is rebutted by CPS drug testing had counsel not been decient [sic] and conducted a reasonable investigation of the facts of case to make informed decision." (doc. 16 at 11.) He argues that "[t]here was no reasonable trial strategy in presenting a fabrication that would have been readily apparent to a trier of fact such as the judge," and that had counsel "conducted a reasonable pretrial investigation, he would not have advised and helped Petitioner introduce this egregious testimony to the judge." (*Id.*)

Petitioner has not identified the "false testimony," "fabrication," or "egregious testimony" that he claims his counsel devised and helped present. (*Id.*) To the extent he contends that counsel devised false or fabricated testimony about him smoking marijuana before falling asleep and the victim falling off his chest while he slept, counsel's affidavit stated that Petitioner "told me that he had laid down for a nap on the couch, that he laid [the victim] on his own chest and fell asleep, and that he woke up to the sound of [the victim] hitting the floor and crying out." *Clerk's Record - 11.07* at 60, *Ex parte Edwards*, No. W14-76339-Y(A). Counsel further stated that Petitioner "later [ ] admitted to my investigator [ ] and still later to me that he had violated [the victim's mother's] rule and smoked marijuana on the day in question and was in fact high when he laid down with [the victim] on the couch." *Id.* At his sentencing hearing, Petitioner testified under

oath that he was alone with the victim and got on marijuana on the offense date, that he fell asleep with the victim on his chest, and that he rolled over in his sleep, causing the victim to fall off his chest and onto the floor where his crying woke up Petitioner.  (*See* doc. 15-14 at 126-30.)

Additionally, Petitioner's allegation that "CPS drug testing" would have rebutted the testimony if counsel had conducted a reasonable investigation is unsupported by the record. Beyond conclusory statements, he fails to identify or provide any evidence of "CPS drug testing" for the offense date.  "Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983)).

Petitioner has not shown that the state court's rejection of this claim was unreasonable, and his claim should be denied.

### 2.  Medical Records

In connection with his third and fifth state habeas grounds, Petitioner contends that counsel was deficient "for failing to investigate the medical records available which could have been used to allow defensive options or impeach the testimony of the Doctor or shown that the pediatrician was negligent in failing to alert the Petitioner and his partner as to the rib injuries and the abnormal head size indicating swelling prior to the time of Petitioner being alone with the complainant as testified to."  (doc. 16 at 12.)   He argues that counsel "was deficient in either investigating the medical records or failing to inform the Petitioner that the defense was available to show that the injury did not occur when the complainant was in Petitioner's sole custody care and control[.]" (*Id.*)   Petitioner also appears to argue that counsel was ineffective because the medical expert he retained did not conduct "'any meaningful' investigation regarding the injuries of the complainant

[because] he would have discovered that the rib fractures the complainant suffered was [sic] at least two weeks prior" to the offense date.  (doc. 4 at 3-4; *see also* doc. 16 at 12.)

In response to Petitioner's claims about the victim's medical records, counsel's affidavit stated:

> [Petitioner] then told me that he and [the victim's mother] had told the pediatrician [ ] at the checkup and vaccination appointment that [the victim's] head looked swollen and that [the pediatrician] had noted that [the victim's] head was in fact 16-17 inches.  [Petitioner] told me that [the victim's mother] had that paperwork.  [The victim's mother] never provided me with that paperwork despite my investigator's and paralegal's numerous attempts.  I continued to investigate this but unfortunately for [Petitioner], the official documentation [the pediatrician] did in fact fill out contradicted [Petitioner's] claims; she documented [the victim's] head as 15 inches and noted no injuries or trauma.  I retained a medical expert [ ] to review [the victim's] medical records, evaluate [the state medical expert's] findings of abuse, and if possible testify in rebuttal.  [The defense medical expert] reviewed all the discovery and agreed with [the state medical expert's] findings.  [The defense medical expert] noted that [Petitioner's] claim that [the victim's] head was already swollen at the pediatrician visit (and thus the injury had occurred prior to [Petitioner] having sole access to [the victim]) was not only contradicted by [the pediatrician's] findings but that if such a devastating head injury had already occurred the injury would be obvious and thus would have been noted.

*Clerk's Record - 11.07* at 60, *Ex parte Edwards*, No. W14-76339-Y(A).  Regarding Petitioner's allegations about the victim's earlier rib injuries, counsel stated that Petitioner admitted that the victim was the subject of a tug-of-war between him and the victim's mother, and that he "acknowledged that that incident probably did cause the rib fractures [the victim] suffered as they matched the age of one of the sets of rib fractures [the state's medical expert] noted in the medical records."  *Id.* at 59-60.

Petitioner has not identified any evidence of which counsel was not, but should have been, aware through a reasonable investigation relating to the victim's medical records or injuries.[3]  He

---

[3] Petitioner alleges in his reply that the victim's pediatrician committed "malpractice for not alerting Petitioner to the complainant's alleged rib injury," and for "misinform[ing] Petitioner that the complainant was 'fine, having no injuries.'" (doc. 16 at 12-13.) He has not shown the existence of any evidence of which counsel was not, but should have been, aware through a reasonable investigation, however.  This claim lacks merit and should be denied.

has not shown that counsel was ineffective or that the state court's rejection of this claim was unreasonable, and his claim should be denied.

### 3. Grand Jury Proceedings

In his sixth state habeas ground, Petitioner argued that counsel was ineffective for failing to inform him "of available challenge to the Perjurious information submitted to the Grand Jury For Indictment." *Clerk's Record - 11.07* at 31, *Ex parte Edwards*, No. W14-76339-Y(A). He contended that the "grand Jury indictment proceeding [was] unconstitutional and unreliable violating [Petitioner's] Due Process guarantees" because his arrest affidavit on and the open plea hearing testimony "assert[ed] that the complanant [sic] had No Injuries At All At the time of the Pediatrician visit," which statements he claimed were rebutted and impeached when the state medical expert testified at the open plea hearing "that the complanant [sic] had injuries that were at least two weeks old."[4] *Id.*

Here, aside from grouping ground six with his arguments relating to grounds two, three, and five, Petitioner does not further address his sixth state habeas ground in his § 2254 filings. To the extent his filings may be liberally construed to incorporate his sixth state habeas ground, the claim is without merit. Petitioner has not provided evidence, and there is no public record, of the grand jury proceedings in his case. His conclusory and unsubstantiated statements about what he assumes occurred at the grand jury proceedings are insufficient to show that counsel rendered ineffective assistance. *See Ross*, 694 F.2d at 1011; *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir.

---

[4] The arrest affidavit stated that the victim's mother told detectives that the victim "'was fine,' having no injuries at all" before he was left in the sole custody of Petitioner. (doc. 15-10 at 9.) Nearly two years after Petitioner was indicted, the state medical expert testified at the open plea hearing that Petitioner and the victim's mother told him the victim was "a well child," and that there were no reported problems as of the afternoon of the offense date; he also testified that based on the review of the records and an exchange with the pediatrician who saw the victim for a routine immunization visit the morning of the offense date, there was nothing noticeably wrong with the victim. (doc. 15-14 at 13-14.)

2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding.").

Further, to the extent Petitioner is challenging the sufficiency of the grand jury indictment by arguing that it was based on "perjurious information" from the search warrant affidavit, "[t]he sufficiency of a state indictment is not a matter for federal habeas corpus review unless it can be shown that the indictment is so defective that the convicting court had no jurisdiction." *Alexander v. McCotter,* 775 F.2d 595, 598 (1985) (internal quotation marks and citation omitted). Federal courts, nevertheless, will not consider claims that a state indictment is insufficient to confer jurisdiction upon the trial court when the issue "was squarely presented to the highest court of the state" and it can reasonably be inferred that that court passed on the merits of the sufficiency issue. *Id.* (internal quotation marks and citation omitted). They do not sit in review of a state court's interpretation of its own law. *See Weeks v. Scott,* 55 F.3d 1059, 1063 (5th Cir.1995).

Petitioner's challenge to the indictment was raised in the state habeas proceedings, and the Texas Court of Criminal Appeals denied his state habeas application. *See Ex parte Edwards*, No. WR-89,282-01 (Tex. Crim. App. Jan. 30, 2019). In so doing, the state court implicitly found the indictment sufficient, and this Court will not review that implicit finding. *See Alexander,* 775 F.2d 598-99. Because the indictment was not defective under state law, counsel was not deficient for failing to raise or alert Petitioner about any challenges to it.

Petitioner has not shown that counsel rendered ineffective assistance, or that the state court's rejection of this claim was unreasonable. The claim should therefore be denied.

## C.    <u>Waiver of Presentence Investigation Report</u>

Regarding his seventh state habeas ground, Petitioner contends that counsel was ineffective "because deficiently [sic] waived the Pre Sentence Investigation and Report Preventing Petitioner

14

from receiving probation."  (doc. 16 at 13.)

Counsel's affidavit stated that when he went to pick up Petitioner's presentence investigation report (PSI) from probation on the day of the open plea hearing, he was told that there was no record that one had been conducted or set up, despite his and probation's recollection otherwise.  *See Clerk's Record - 11.07* at 61, *Ex parte Edwards*, No. W14-76339-Y(A).  Counsel further stated that after informing the trial court and the prosecutor, the judge "proposed moving forward with the hearing testimony today without the PSI in-hand, that if the testimony raised the possibility that he may consider probation, he would order a PSI and reschedule sentencing so he could review the PSI, but that if he did not feel the testimony raised such a possibility, he would move directly into sentencing."  *Id.*

Petitioner argues that the open plea hearing transcript "suggests that the Judge was not informed of what happened to the PSI by defense counsel."  (doc. 16 at 13.)  He cites the following exchange:

THE COURT: Was a PSI performed?

[COUNSEL]:  Judge, we have a problem with the PSI.  We requested it.  They said it wasn't done but we're waiving.

. . .

THE COURT:  I understand the Defense is waiving a PSI; is that correct?

[COUNSEL]:  Yes, Your Honor.

(doc. 15-14 at 144-45; *see also* doc. 4 at 7.) According to Petitioner, the trial court's "question directed to counsel as to whether or not a PSI was performed refutes any reasonable inference that such knowledge of a previous agreement 'between counsel and the court regarding applicants [sic] PSI,' as alleged by counsels [sic] affidavit ever even actually existed."  (doc. 4 at 7-8.)

Assuming for purposes of this motion only that counsel rendered deficient performance

15

regarding the PSI as alleged, *Strickland* also requires a showing of prejudice.  To show prejudice in the sentencing context, a petitioner must demonstrate that the alleged deficiency of counsel created a reasonable probability that his sentence would have been less harsh.  *See Glover v. United States*, 531 U.S. 198, 200 (2001); *see also Strickland*, 466 U.S. at 694.  One cannot satisfy the second prong of *Strickland* with mere speculation and conjecture.  *See Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992).

Here, following testimony and arguments at the open plea hearing, the trial court stated, "I don't believe you.  I don't believe there's any way that baby would have received those injuries by rolling off your chest, even hitting the coffee[ ]table and then the floor. It couldn't have happened.  The Court is setting punishment at 50 years in the Texas Department of Criminal Justice." (doc. 15-14 at 151.)  Petitioner offers no facts or evidence beyond conclusory allegations and speculation to demonstrate a reasonable probability that he would have received a sentence of probation or a sentence that was less harsh but for counsel's alleged deficiency.  Accordingly, he has not shown prejudice under *Strickland*, and he has not shown that the state court's rejection of this claim was unreasonable.  The claim should be denied.

**D.    Mandatory Minimum**

Regarding his eighth state habeas ground, Petitioner contends that counsel was ineffective because he "misinformed Petitioner of the Mandatory Minimum 25 years he would have to serve if the State achieved their request of a 50 year sentence at open plea." (doc. 16 at 14.)  He argues that "[t]here is no mention in the record or in attorneys [sic] affidavit of Petitioner being informed that Petitioner would have to do half of the time he is sentenced to." (*Id.* at 14-15.)  He claims that he "could not appreciate the consequences of his plea because counsel failed to inform Petitioner of the mandatory minimum." (*Id.* at 15.)

16

Counsel's affidavit stated that he communicated the prosecution's plea bargain offer of 50

years' imprisonment to Petitioner and explained that, "as causing serious bodily injury to a child

is a '3G' offense, he would have to complete at least half of any prison sentence imposed and could

be forced to serve the entirety of the sentence."[5]  *Clerk's Record - 11.07* at 60, *Ex parte Edwards*,

No. W14-76339-Y(A).  Because the record shows that Petitioner was informed that he would have

to serve half of any sentence he received, he has not shown that the state court's rejection of this

claim was unreasonable.[6]  Accordingly, this ground for relief should be denied.

## E.    Cumulative Error

Regarding his tenth state habeas ground, Petitioner "asserts that the cumulative effect of

counsel's errors caused Petitioner Substantial and Injurous [sic] harm."  (doc. 16 at 15.)  "[F]ederal

habeas corpus relief may only be granted for cumulative errors in the conduct of a state trial where

(1) the individual errors involved matters of constitutional dimension rather than mere violations

of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors

'so infected the entire trial that the resulting conviction violates due process.'"  *Turner v.*

*Quarterman*, 481 F.3d 292, 301 (5th Cir. 2007) (quoting *Derden v. McNeel*, 978 F.2d 1453, 1454

(5th Cir. 1992)).

---

[5] A "3G" offense refers to offenses listed under § 3(g) of Article 42.12 of the Texas Code of Criminal Procedure; a defendant convicted of such an offense must serve at least half of the sentence imposed, but no less than two years, before he can be eligible for parole.  *See* Tex. Gov't Code § 508.145(d)(1) (2016); Tex. Code Crim. P. art. 42.12, § 3g(1) (repealed 2017).  Petitioner's conviction of a first-degree felony against a child under § 22.04 of the Texas Penal Code was a § 3(g) offense.  *See id.*

[6] Petitioner's state habeas application also alleged that counsel was ineffective because he advised Petitioner that he would only have to serve five years on a 50-year sentence.  *See Clerk's Record - 11.07* at 34, *Ex parte Edwards*, No. W14-76339-Y(A).  Petitioner does not raise this argument in his § 2254 filings.  Even if he had, however, counsel's affidavit stated that he advised him that he would have to serve half of any sentence he received, and could be made to serve the entire sentence.  *See id.* at 60.  It also stated that he "never advised [Petitioner] that he would have to serve 5 years on a 50 year sentence," and that he had "never in my career told a client how much time they would do on a sentence."  *Id.*  To the extent Petitioner now claims that counsel told him he would only serve five years on a 50-year sentence, he has not shown that the state court's rejection of his claim was unreasonable, and it should be denied.

Petitioner has not shown that counsel rendered ineffective assistance,[7] so he has not shown that there were cumulative errors, or that the state court's rejection of this claim was unreasonable. He is not entitled to § 2254 relief on this claim and it should be denied.

## IV.    INVOLUNTARINESS OF PLEA

Petitioner contends that "he was denied the effective assistance of trial counsel at guilty plea rendering his plea unknowing, involuntary, and unintelligent." (doc. 16 at 5.)

A plea of guilty waives a number of constitutional rights. *United States v. Ruiz*, 536 U.S. 622, 628 (2002); *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969). Consequently, "the Constitution insists, among other things, that the defendant enter a guilty plea that is 'voluntary' and that the defendant must make related waivers 'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences.'" *Ruiz*, 536 U.S. at 629 (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)); *accord Bousley v. United States*, 523 U.S. 614, 618 (1998) (a guilty plea "is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'") (quoting *Brady*, 397 U.S. at 748). A plea qualifies as intelligent when the criminal defendant enters it after receiving "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Bousley*, 523 U.S. at 618

---

[7] Petitioner's fourth and ninth state habeas grounds alleged that counsel was ineffective for failing to request the withdrawal of Petitioner's guilty plea based on his reckless conduct, and for failing to inform him of his right to appeal, respectively. *See Clerk's Record - 11.07* at 27-28, 35, *Ex parte Edwards*, No. W14-76339-Y(A). Petitioner does not include or address these arguments in his § 2254 filings. To the extent he seeks to assert them, because he has failed to argue any basis for relief on these claims, they should be denied.

Even if Petitioner's § 2254 filings can be liberally construed to reassert these state habeas claims in this action, however, they are without merit. Counsel's affidavit stated that Petitioner's testimony at the open plea hearing went as planned based on the theory to which they had agreed, so he "did not feel withdrawing [Petitioner's] plea based on recklessness either fit the law or was in his best interests." *Id.* at 62. Counsel further stated that after sentencing, he went through Petitioner's appellate rights with him, and that halfway through counsel's review of the relevant appellate forms, Petitioner stated he did not want to appeal. *See id.* When Petitioner later changed his mind, counsel visited him and filled out the appropriate forms to appeal. *See id.* The record also shows that Petitioner filed a timely notice of appeal and was appointed counsel on appeal. (*See* doc. 15-10 at 82-84.) He has not shown that the state court's rejection of these claims was unreasonable, and to the extent the claims are reasserted here, they should be denied.

(quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)). In determining whether a plea is intelligent, "the critical issue is whether the defendant understood the nature and substance of the charges against him, and not necessarily whether he understood their technical legal effect." *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991).

"The voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.'" *Fisher v. Wainwright*, 584 F.2d 691, 693 (5th Cir. 1978) (quoting *Brady*, 397 U.S. at 749). Courts considering challenges to guilty pleas "have focused on three core concerns: absence of coercion, the defendant's understanding of the charges, and a realistic understanding of the consequences of a guilty plea." *United States v. Gracia*, 983 F.2d 625, 627-28. A realistic understanding of the consequences of a guilty plea means that the defendant knows the "the immediate and automatic consequences of that plea such as the maximum sentence length or fine." *Duke v. Cockrell*, 292 F.3d 414, 417 (5th Cir. 2002). "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea. . . will be upheld on federal review." *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (*en banc*), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981).

Inmates who challenge their guilty pleas on collateral review must overcome a "strong presumption of verity" accorded "solemn declarations" made in open court. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). They must also overcome the presumption of regularity and "great evidentiary weight" accorded court records. *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (holding that a signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether a plea is entered voluntarily and knowingly); *see also Bonvillain v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986) (holding that court records are "accorded great

weight"); *Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974) (holding that "official records are entitled to a presumption of regularity.").

As discussed, Petitioner has not shown that he received ineffective assistance of counsel during the guilty plea proceedings. The record shows that he was advised in his plea documents and during his open plea hearing that he was charged with a first-degree felony with "a punishment range of a minimum of five years up to 99 years or life in the Texas Department of Criminal Justice." (doc. 15-14 at 8; *see also* doc. 15-10 at 64-67.) He affirmed that he understood the punishment range and that the trial court could "set punishment somewhere within that 5 to 99 year of life range[.]" (doc. 15-14 at 8-9; *see also* doc. 15-10 at 67.) With this knowledge and understanding, Petitioner signed his plea documents and pleaded guilty through counsel at the open plea hearing. (*See* doc. 15-10 at 67; doc. 15-14 at 10.)

Petitioner has not overcome the "strong presumption of verity" given to his declarations in the plea documents and the open plea hearing, or the "great evidentiary weight" and "presumption of regularity" given to court records. *Blackledge*, 431 U.S. at 74; *Abreo*, 30 F.3d at 32; *Webster*, 505 F.2d at 930. He has therefore failed to show that the state court's rejection of his claim of an involuntary plea based on the ineffective assistance of counsel was unreasonable, and this claim should be denied.

## V.    RECOMMENDATION

The *Petition for a Writ of Habeas Corpus by a Person in State Custody*, received on March 22, 2019 (doc. 3), should be **DENIED** with prejudice.

**SIGNED this 24th day of November, 2021.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE